**L. Andrew BERNHEIM and Santo J. Lalomia, Plaintiffs,**

v.

**CHUBB INSURANCE COMPANY OF CANADA, Defendant.**

Civ. A. No. 92–4606.

United States District Court, D. New Jersey.

Oct. 26, 1993.

---

Gennet, Kallmann, Anton & Robinson, Parsippany, NJ By Stanley W. Kallmann.

Chazkel & Associates, P.C., East Brunswick, NJ By Michael F. Chazkel.

## OPINION

HAROLD A. ACKERMAN, District Judge:

This matter comes before the court on the motion of plaintiffs L. Andrew Bernheim ("Bernheim") and Santo J. Lalomia, Bernheim's trustee in bankruptcy ("Lalomia" or "trustee"), to refer this action to the United States Bankruptcy Court for the District of New Jersey.

For the following reasons, plaintiffs' motion for a reference is denied.

### I. Factual Background

The facts relevant to this motion are as follows. In 1982, plaintiff Bernheim filed a petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code. *See In the Matter of L. Andrew Bernheim,* Case Nos. 82–06931, 83–03818, 83–02300, and 83–03817 (WHG). On October 4, 1985, pursuant to the Order of United States Bankruptcy Judge William H. Gindin, a plan of reorgani-

zation was confirmed. On October 24, 1986, an Order Modifying Confirmed Plans of Reorganization was entered. Pursuant to this order, Bernheim was discharged from bankruptcy, although the bankruptcy court retained limited jurisdiction over him pending consummation of the reorganization plan.

In 1989, Bernheim obtained a policy of insurance from defendant Chubb Insurance Company of Canada ("Chubb"), effective November 16, 1989. The policy provided coverage for, among other things, loss by theft or burglary with respect to property located at 2933 Thunder Bay Road, Ridgeway, Ontario, Canada. Plaintiffs claim that in November 1990, the property was burglarized and various items of Bernheim's personal property were stolen. On September 3, 1991, Bernheim submitted a proof of loss to Chubb. When Chubb refused to pay the loss, plaintiffs commenced this action seeking recovery for the theft loss.

On April 13, 1993, by order of Judge Gindin, Lalomia was designated as an escrow agent to hold certain property in escrow, including the damages claim against Chubb. Plaintiffs now seek a reference to the bankruptcy court.

## II. Discussion

Chubb opposes plaintiffs' motion for a reference on the ground that both parties have demanded a jury trial in this matter. Chubb argues that a jury trial is not available in bankruptcy court and to refer the matter to that court would therefore deprive Chubb of its right to a jury trial.

Plaintiffs argue, in turn, that this action constitutes a "core" proceeding and that the bankruptcy court therefore has jurisdiction over this matter. They further argue that the bankruptcy court has authority to conduct jury trials in core proceedings.

In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the United States Supreme Court held that a person who has not submitted a claim against a bankruptcy estate has a Seventh Amendment right to a jury trial when sued by the trustee in bankruptcy to recover monies allegedly due to the debtor. *Id.* at 36, 109 S.Ct. at 2787. The Supreme Court declined, however, to decide whether bankruptcy courts have authority to conduct jury trials. *Id.* at 50, 109 S.Ct. at 2794–95. More recently, the Third Circuit held that a bankruptcy court is without authority to conduct a jury trial in a non-core proceeding. *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir.1990). The Third Circuit has not had occasion to determine whether a bankruptcy court can conduct a jury trial in a core proceeding and other circuits are divided over this issue. *Metro Transportation Co. v. North Star Reinsurance Co.*, 912 F.2d 672, 675 n. 1 (3d Cir.1990).

Thus, resolution of this motion requires me to decide the following issues: 1) whether Chubb is entitled to a jury trial in this matter; 2) whether this action constitutes a core or non-core proceeding; and 3) if the proceeding is core, whether a bankruptcy court has authority to conduct a jury trial in a core proceeding.

### A. Right to a Jury Trial

The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...."

In *Granfinanciera*, the Supreme Court outlined the following three-prong approach for determining whether a party is entitled to a jury trial:

"First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

492 U.S. at 42, 109 S.Ct. at 2790 (citations omitted).

■ Applying this analysis, I find that Chubb is entitled to a jury trial in this matter. Plaintiffs' claim is clearly legal in nature. An action to recover on an insurance policy is a garden-variety contract action. Such a claim, if brought in the 18th century, would have been tried by a jury. *See Beard,* 914 F.2d at 438 (in 1791, trial of action for breach of contract would have been by jury).

Turning to the more important prong of the analysis, it is undisputed that plaintiffs seek monetary damages, which is clearly a legal remedy. *See id.; see also Pernell v. Southall Realty,* 416 U.S. 363, 370, 94 S.Ct. 1723, 1727, 40 L.Ed.2d 198 (1974) ("where an action is simply for the recovery ... of a money judgment, the action is one at law") (citations omitted).

The final inquiry is whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder. In *Granfinanciera,* the Court held that "[u]nless a legal cause of action involves 'public rights,' Congress may not deprive parties litigating over such a right of the Seventh Amendment's guarantee to a jury trial." 492 U.S. at 53, 109 S.Ct. at 2796. The Court also indicated that actions that "resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate" are "matters of private rather than public right." *Id.* at 56, 109 S.Ct. at 2798 (citations omitted). Here, plaintiffs' action is merely a state-law contract action, which, if successful, would augment the debtor's property. It is therefore a matter of private right.

Based on these three factors, I conclude that Chubb is entitled to a jury trial in this action.

## B. Core or Non–Core Proceeding

The starting point for determining whether an action is a core or non-core proceeding is the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon,* the Court held that bankruptcy courts do not have power to adjudicate "state-created private rights" which are the province of Article III courts. *Id.* at 71, 102 S.Ct. at 2871. Congress thereafter passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "Act") in response to *Marathon.* The Act distinguishes between "core" proceedings and those that are merely "related to" title 11 cases. Pursuant to the Act, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, ... and may enter appropriate orders and judgments...." 28 U.S.C. §§ 157(b)(1).[1] Congress did not define "core" proceedings, although Section 157(b)(2) sets forth the following non-exclusive list of core proceedings:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate....

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

---

1. In non-core proceedings that are related to a case under title 11, unless the parties consent to the bankruptcy court's jurisdiction, a bankruptcy judge has power only to "submit proposed findings of fact and conclusions of law to the district court" subject to de novo review by that court. 28 U.S.C. § 157(c)(1).

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2)(A)–(O).

Courts have taken different approaches to determining whether a proceeding is core or non-core, particularly with regard to subsections (A) and (O), the two catch-all provisions of Section 157(b)(2). *In re Billing,* 150 B.R. 563 (D.N.J.1993); *see also Beard,* 914 F.2d at 443–45 (discussing different approaches employed by courts).

The Ninth Circuit, for example, has interpreted "core" proceedings very narrowly, holding that state law contract claims that do not fall within the specific categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are non-core proceedings, even if they arguably fall within the literal wording of the two catch-all provisions of sections 157(b)(2)(A) and (O). *In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir. 1986).[2] The First Circuit, in contrast, has taken the opposite view, interpreting " 'core proceedings' ... broadly, close to or congruent with constitutional limits." *In re Arnold Print Works, Inc.,* 815 F.2d 165, 168 (1st Cir.1987); *see also In re Ben Cooper, Inc.,* 896 F.2d 1394, 1399–1400 (2d Cir.) (generally espousing broad interpretation of core proceedings), *cert. granted,* 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779, *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). The Fifth, Seventh and Eleventh Circuits apply the following test: "a proceeding is core under section 157 if it invokes a substantive

right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Wood,* 825 F.2d 90, 97 (5th Cir.1987); *see Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir.1990) (adopting *Wood* test); *In re Davis,* 899 F.2d 1136, 1140–41 (11th Cir.) (same), *cert. denied,* 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990).

The fact that a proceeding involves state law is not dispositive of the inquiry. 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."). Finally, many courts have looked to whether the claim arises pre-petition or post-petition. *See Ben Cooper,* 896 F.2d at 1399; *Arnold,* 815 F.2d at 168.

The claim that is the subject of this action is purely a state law contract claim. Plaintiffs do not contend that the claim falls within any of the specific categories of core proceedings enumerated in Section 157(b)(2)(B) through (N) and I find that the claim does not fall within any of these categories.

 Turning to the catch-all categories of core proceedings set forth in Section 157, I find that this action does not fall under either one. Under Section 157(b)(2)(A), matters concerning the administration of the estate are core proceedings. "A matter concerning the administration of an estate is a matter that the bankruptcy court's adjudication of which is an integral, if not essential, part of administering the estate." *In re J. Baranello & Sons, Inc.,* 149 B.R. 19, 25 (Bankr. E.D.N.Y.1992). This action to recover on an insurance policy is not an essential or integral part of administering the estate. Indeed, the plan of reorganization was confirmed four years before the insurance policy was even obtained and six years prior to the time the claim arose. *See id.* at 26 (where hearing on plan confirmation has been held and confirmation is in final stages, proceeding is not a matter concerning administration

---

**2.** This approach has been criticized by other courts. *See, e.g., In re Ben Cooper, Inc.,* 896 F.2d 1394, 1400 (2d Cir.), *cert. granted,* 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779, *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112

L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991); *Billing,* 150 B.R. at 566.

of debtor's estate). Nor can the action be deemed to affect the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship under 28 U.S.C. § 157(b)(2)(O). Plaintiffs' action against Chubb does not involve the liquidation of existing estate assets. The only effect this action may have on the estate is that if the action is successful, the estate may have more assets available for distribution. However, "Subsection (O) does not render a proceeding core merely because the resolution of the action may result in more, or less, assets in the estate." *Baranello*, 149 B.R. at 26. Moreover, Chubb is not a creditor of Bernheim. Therefore, it cannot be said that this action will have any effect on the debtor-creditor relationship. *Id.*

In addition, applying the various tests articulated above, I conclude that this action is a non-core proceeding. First, under the narrow Ninth Circuit test, this action would not be a core-proceeding because it does not fall within any of the specifically enumerated categories of Section 157(b)(2)(B)–(N). Under the *Wood* test, this case is clearly non-core. It is a straightforward claim on an insurance contract. It neither invokes a substantive right under title 11, nor can it be said that this action could only aries in the context of a bankruptcy case. Rather, the claim arose independently of Bernheim's bankruptcy proceedings, five years following his discharge in bankruptcy.

■ Plaintiffs argue, however, that the action is a core proceeding because the insurance contract was entered into post-petition. Plaintiffs rely upon *Arnold* in support of their position. To be sure, whether a claim arises pre-petition or post-petition is an important factor. *See, e.g., Arnold*, 815 F.2d at 168. However, it is not dispositive of the determination of whether a proceeding is core or non-core. Indeed, in *Beard*, the Third Circuit observed that although the *Marathon* case involved a pre-petition contract claim, there was no indication that the Supreme Court relied on the pre-peti-

tion/post-petition distinction. *Beard*, 914 F.2d at 444–45; *see also In re Treadway*, 117 B.R. 76, 83 (Bankr.D.Vt.1990) ("Not every post-petition dispute effects the Estate, however.") (citing cases).

*Arnold* involved a contract for the sale of estate assets, which was entered into post-petition as part of the debtor's efforts to liquidate the estate. The court deemed the proceeding to be core, not just because it involved a post-petition contract, but because the claim "arose out of the administrative activities of a debtor-in-possession." 815 F.2d at 168. In fact, in *Beard*, the Third Circuit distinguished *Arnold* in part on the basis that the contract at issue in *Arnold* was part of the debtor's efforts to liquidate estate assets and was therefore an integral part of the bankruptcy. *Beard*, 914 F.2d at 445. In contrast, in *Beard*, the contracts were "merely for rent, and ... therefore only tangentially related to the bankruptcy." *Id.*[3] Similarly, this action, for recovery of insurance proceeds, did not arise out of the administration of the estate, but rather, is "only tangentially" related to the bankruptcy. This is not a situation where the insurance contract was entered into in order to comply with the plan of reorganization. *See Ben Cooper*, 896 F.2d at 1399 (reorganization plan required insurance to protect estate assets).

*Arnold* is further distinguishable from this case in that the insurance contract at issue in this case was executed over four years following confirmation of the plan of reorganization. Thus, it cannot be said that this contract, or resolution of the action against Chubb, is integral to the administration of the estate. *See Baranello*, 149 B.R. at 26; *In re Coastal Petroleum Corp.*, 142 B.R. 177, 179 (Bankr.N.D.Ohio 1992) (dispute arising from contract executed post-confirmation deemed non-core). In this regard, I note that the bankruptcy court, by order entered October 24, 1986, discharged Bernheim from bankruptcy and terminated all matters except to the extent it retained jurisdiction for the purpose of resolving *pending* disputed claims. *See* Order Modifying Confirmed Plans of Reorganization, October 24, 1986.

---

**3.** The contracts in *Beard* were pre-petition contracts and the Third Circuit also distinguished *Arnold* on that basis. *Id.* at 445. The court stated that it was not confronted with and there-

fore was not deciding the issue of whether a claim for breach of a post-petition contract is a core matter. *Id.* at 445.

· Clearly, this claim was not pending at that time. Indeed, it arose five years after Bernheim was discharged from bankruptcy.

Because the contract that is the subject of this action was entered into post-confirmation, the reasoning of *Arnold* is simply inapplicable here. In *Arnold,* the court stated:

A party who contracts with an apparently healthy company—a company that has not filed a petition in bankruptcy—may find it unpleasantly surprising to have to defend its *pre*-petition contract in a bankruptcy court .... But it is difficult to see any unfair surprise in bringing a post-petition contract action before a bankruptcy court. Parties who contract with a bankrupt company's trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise.

815 F.2d at 170. Here, at the time Chubb issued the insurance policy to Bernheim, he had already been discharged from bankruptcy. In short, the insurance contract was not entered into with "an officer of the court," *id.* at 169 (citation omitted), and was not part of the administration of the estate.

■ Plaintiffs argue that the fact that Lalomia was designated escrow agent to hold the claim somehow supports their contention that this matter is a core proceeding. However, the fact that the claim is in the possession of an escrow agent and that any potential recovery may possibly be used to pay off remaining claims does not thereby convert this state law contract action into a core proceeding. *See Baranello,* 149 B.R. at 26.

■ For all these reasons, I find that this action is a non-core proceeding. Because I

have determined that Chubb has a right to a jury trial, and because the bankruptcy court does not have power to conduct a jury trial in a non-core proceeding, plaintiffs' motion to refer this matter to the bankruptcy court must be denied.[4]

### Conclusion

For all the foregoing reasons, plaintiffs' motion for a reference is denied.

---

4. Because I have determined that plaintiffs' claim is a non-core proceeding, I need not reach the issue of whether the bankruptcy court has power to conduct jury trials in a core proceeding. I note, however, that contrary to plaintiffs' contention, the majority of federal courts that have considered the issue have held that a bankruptcy court cannot conduct a jury trial in a core proceeding. *See In re Grabill Corp.,* 967 F.2d 1152 (7th Cir.1992); *In re Baker & Getty Financial Services, Inc.,* 954 F.2d 1169 (6th Cir.1992); *In re Kaiser Steel Corp.,* 911 F.2d 380 (10th Cir.1990); *In re United Missouri Bank, N.A.,* 901 F.2d 1449 (8th Cir.1990). Only the Second Cir-

cuit has held that a bankruptcy court may conduct a jury trial in a core proceeding. *Ben Cooper,* 896 F.2d 1394. The district courts in the District of New Jersey appear to be split. *Compare Dailey v. First Peoples Bank,* 76 B.R. 963, 968 (D.N.J.1987) (bankruptcy court may conduct jury trial in core proceeding) *with Billing,* 150 B.R. at 569 (bankruptcy court lacks power to conduct jury trial in core proceeding). In *Billing,* however, the court observed that the reasoning of the *Ben Cooper* and *Dailey* cases has been undermined by the more recent decisions of the other circuits.