**In re NUCKOLS AND ASSOCIATES SECURITY, INC., Debtor.**

**NUCKOLS AND ASSOCIATES SECURITY, INC., Plaintiff,**

v.

**BOUCHARD TRANSPORTATION COMPANY, INC., Defendant.**

Bankruptcy No. 1–89–00780.
Adv. No. 1–89–0115.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 29, 1989.

Eric C. Redman, Thomas L. Blackburn, Indianapolis, Ind., for plaintiff.

Douglas E. Hart, Fern E. Goldman, Cincinnati, Ohio, for defendant.

Charles Caldwell, Asst. U.S. Trustee, Cincinnati, Ohio.

## DECISION HOLDING PROCEEDING TO BE CORE

BURTON PERLMAN, Chief Judge.

The issue presented in what is now before us is whether the debtor's action in this adversary proceeding to recover an account receivable is a core proceeding within the meaning of 28 U.S.C. Section 157(b)(2). A statute, 28 U.S.C. Section

157(b)(3), expressly provides that this issue is for us to resolve.

Plaintiff in this proceeding is the debtor-in-possession in a Chapter 11 case pending in this court. The business of this debtor is the provision of security services and personnel to business entities. Plaintiff initiated this proceeding by filing a "Complaint for Turnover of Account Receivable" against defendant, Bouchard Transportation Company, Inc., an entity for which it provided such services and personnel. Defendant timely moved the court for a determination whether the instant matter was a core proceeding. Both parties have furnished memoranda and the question is now submitted.

■ Pursuant to 28 U.S.C. Section 157(a), the district courts may refer "cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to bankruptcy judges. Bankruptcy judges are authorized to "hear and determine" referred "cases under title 11" and "core proceedings" arising under title 11 or arising in a case under title 11. Title 28, U.S.C. Section 157(b)(1). A determination as to whether proceedings before the bankruptcy court are core or noncore is to be made by the bankruptcy court "on the judge's own motion or on a timely motion of a party". Title 28 U.S.C. Section 157(b)(3). Core proceedings heard and determined by bankruptcy judges pursuant to Section 157(a) and (b) are subject to review by a district court "in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." Title 28 U.S.C. Section 158(c). In noncore proceedings, unless the parties consent to the bankruptcy court's jurisdiction, the bankruptcy judge "submit[s] proposed findings of fact and conclusions of law to the district court" and the parties are entitled to de novo review of any matter to which they "timely and specifically" object. Title 28 U.S.C. Section 157(c)(1).

The current state of the law about whether a proceeding to collect an account receivable is core or non-core is well summarized at 1 Bankruptcy Service, L.Ed. (Law. Co-op.) (1989) Section 2C:59.

No clear consensus exists among the courts on whether actions to collect an account receivable are core. The issue is important because in Chapter 11 reorganization cases, normally filed by a business entity, a significant portion of the estate's assets will be in the form of accounts receivable.

Actions to collect an account receivable have been found to be core under various of the subparagraphs of 28 USCS Section 157(b)(2) which enumerates particular matters and proceedings as included within the list of core proceedings. Specifically, actions to collect an account receivable have been held to be core proceedings under subparagraphs (A), (B), (E), and (O). On the other hand, such actions have been held noncore in a number of cases.

\* \* \* \* \* \*

While one view sees the collection of a debtor's account receivable as a critical part of the administration of the bankruptcy estate traditionally pursued by the Bankruptcy Court, another view considers it doubtful, because of the similar legal nature between actions to collect accounts receivable and the breach of contract claim at issue in Northern Pipeline, that Congress intended that actions to collect accounts receivable be tried by a Bankruptcy Court. The first view is based in part on the thought that requiring parties to relitigate the accounts receivable matter in state court would undermine judicial economy and impose an administrative burden upon the bankruptcy estate, defeating the goal of maximizing the recovery of assets for the creditors.

We omit the extensive citation of cases supporting the above text.

In this state of the law, we turn to the case before us. The business of this debtor is the provision of security services to third party business entities. It rendered such services to the present defendant and now seeks to collect the account which arose thereby.

The non-exclusive enumeration of core proceedings in 28 U.S.C. Section 157(b)(2)

has as a common thread the adjudication of matters intimately connected to the affairs of a bankruptcy debtor. Where a debtor has filed a Chapter 11 case, nothing is more vitally and intimately linked to the affairs of the debtor than the collection of accounts receivable which arose in the course of the debtor's business and which will provide or contribute to the funding of the debtor as it seeks to find its way to viability. To put the adjudication of such matters out of the bankruptcy court will frustrate the very purpose of Chapter 11, for it will send such matters to courts which by reason of the pressure of other matters are unable to deal with the affairs of debtors as expeditiously as bankruptcy courts can.

We are aware of authorities holding such claims to be noncore, but decline to follow them. For the most part, they hold such claims to be indistinguishable from the contract claim in *Northern Pipeline Co. v. Marathon Pipeline Co., et al.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). We do not believe that *Northern Pipeline* means that any and all contract actions are beyond the pale for bankruptcy courts. In *Northern Pipeline*, then Chief Justice Burger in his dissent illuminated the position of the majority which was made by Justices Rehnquist and O'Connor, by saying:

> Rather, the Court's holding is limited to the proposition stated by Justice Rehnquist in his concurrence in the judgment that a "traditional" state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an "Article III court" if it is to be heard by any court or agency of the United States.

Ordinary course of business accounts receivable, such as that in the case before us, are not "related only peripherally" to a Chapter 11 case. Their collection goes to the very heart of the rehabilitation scheme contemplated for Chapter 11. While the collection of an ordinary course of business account receivable sounds in contract, it is a species which we hold must, because of its intimate relationship to Chapter 11 reha-

bilitation, be regarded as warranting a special status as a core matter.

It is for the reason that they do not involve ordinary course of business accounts receivable claims that we distinguish the authorities most heavily relied on by defendant. *In re Castlerock Properties*, 781 F.2d 159 (9th Cir.1986) and *In re Wood*, 825 F.2d 90 (5th Cir.1987).

■ As a further reason for reaching the conclusion which we do, we find that a proceeding such as that before us is within the purview of 11 U.S.C. Section 542(b). That statutory provision makes clear that certain debts owed to the estate are the proper subject of a turnover proceeding, and are thus core proceedings pursuant to 28 U.S.C. Section 157(b)(2)(E). The Bankruptcy Code there provides:

> Sec. 542. Turnover of property to the estate.

> \*   \*   \*   \*   \*   \*

> (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

"[A] claim for an overdue account, specific in its terms as to amount due and date payable, constitutes a matured debt" for these purposes. *In re Allegheny, Inc.*, 68 B.R. 183, 190 (Bankr.W.D.Pa.1986). That the party owing an account may assert valid defenses to the payment of the debt is contemplated in Section 542(b) and thus does not militate against holding this debt to be matured. We approve and adopt the reasoning employed by the court in *Allegheny* in reaching the conclusion that an overdue account constitutes a matured debt for purposes of 11 U.S.C. Section 542(b).

Accordingly, defendant's Motion for a Determination that this Adversary Proceeding is Not a Core Proceeding is denied.